Parker, J.
This action was brought in the court of common pleas of Lucas county, Ohio, on account of the death of Jesse M. Fox, which, it is alleged by the plaintiff below, May J. Pox, as administratrix, was caused by the wrongful'act of the Wabash Railway Company, defendant below, and which wrongful act and death occurred in the state of Indiana. The trial resulted in a verdict for the plaintiff below for $8,000; which, upon a motion for a new trial, was reduced by the trial judge to $6,500,and judgment was rendered for that amount.
It is contended on behalf of the plaintiff in error that the court below upon the trial, erred in various particulars; and, in the first place, in holding that this action may be maintained in the state of Ohio. It is contended by the plaintiff in error that it may not be maintained here; and the reasons given by counsel cannot be better stated than in their brief, and therefore I read therefrom.
“The court erred in holding that the law of Indiana can be enforced in Ohio. Section 6184a, Ohio Revised Statutes, provides as follows: ‘Whenever death has been or may be caused by a wrongful act, neglect, or default in another state, territory or foreign country, for which a right to maintain an action and recover damages in respect thereof is given by a statute of such other state, territory, or foreign country, such right of action may be enforced in this state in all cases where such other state, territory or foreign country allows the enforcement in its courts of the statutes of this state of a like character; but' in no case shall the damages exceed the amount authorized to be recovered for a wrongful neglect or default in this state causing death.’ ”
Then follows a provision as to the limitation of the right to begin the action to two years following the death.
*442 “This section was enacted in 1894. 90 O. L., 408. Prior to the enactment of this statute, it was uniformly held by our supreme court that the provisions of section 6134, Revised Statutes, giving the action for wrongfully causing death, do not extend to cases where the wrongful act causing death was committed outside of this state, and that the action would not lie in this state in favor of an administrator appointed here on a cause of action arising under a similar statute of another state.”
In support of this ar9 cited the cases of Woodward v. Railway Company, 10 Ohio St., 121; Hover v. Penn. Company, 25 Ohio St., 667, and Brooks, Adm’r, v. Penn. Company, 53 Ohio St., 655.
. “The question in this case is, therefore, whether Indiana is a state which allows the enforcement in its courts of the statute of this state of like character, i. e. the statute giving an action for wrongfully causing death. This statute is section 6134, Revised Statutes, and provides that the action for wrongfully causing death shall exist where the party would have been entitled to maintain an action and recover damages for the injury in case death had not ensued, and it is therefore obvious that the test for determining whether the action for wrongfully causing death is, would there have been a liability had death not ensued? This necessarily makes the rule of law determining the liability part and parcel of the act for wrongfully causing death. Bearing this in mind, let us look at the Indiana act. The Indiana act of wrongfully causing death is correctly pleaded in the petition in this case, and is substantially similar to the Ohio statute. But the rules of law determining whether a liability would have existed had death not ensued are contained in the Employers’ Liability Act of Indiana, upon which plaintiff relies, and which is necessarily a part of the “death statute” in that state. For there, as here, the action for wrongfully causing death exists only in cases' where a liability would have existed had death not ensued.”
“Now the fourth section of the Indiana Employers’ Liability Act contains this provision: In case any railroad corporation which owns or operates a line extending into or through the state of Indiana and into or through another *443 or other states, and a person in the employ of such corporation, a citizen of this state, shall be injured as provided in this act, in any other state where such railroad is owned or operated, and a suit for such injury shall be brought in any of the courts of this state, it shall not be competent for such corporation to plead or prove the decision or statutes of the state where such person shall have been injured as a defense to the action brought in this state.
“If this section means anything it certainly means that in all cases where a citizen of Indiana, injured in another state, brings suit in Indiana against the offending railroad company, the rules for determining whether a liability exists or not, are the rules prescribed by the statute itself, and that the rules of law of the state where the accident occurred are to be entirely ignored by the courts of Indiana. In other words, it applies Indiana law instead of Ohio law, in determining whether a liability exists or not. It is true that prior to the enactment of this statute the supreme court of Indiana held that it would enforce the statute of Ohio for wrongfully causing death, but it has not held since this Employers’ Liability Act was passed that it would apply the laws, whether statutory or judicial, of another state in determining whether a liability existed or not. To enforce the Ohio statute for wrongfully causing death and at the same time apply the Indiana law for the purpose of determining whether a liability would have existed if death had not ensued, is certainly not enforcing Ohio law at all..
“The vital thing about the statute giving an action for wrongfully causing death is the question of how it shall be determined whether a liability would have existed if death had not ensued. Unless Indiana is willing to enforce the rules of law for determining this question, it is not enforcing the Ohio ‘death statute’ at all.”
We think there is force'in this statement and argument. In the case of Ott v. Railway Company, 18 C. C., 395, we hold that where an action is permitted in this state for ' » death wrongfully caused and occurring in another state, we must look to the laws of the state where the wrongful act resulting in death occurred to determine all questions pertaining to the cause of action. Ott v. Railway Company, supra, has been affirmed by the supreme court, for the *444 reasons stated in the opinion of the circuit court, so that, if it had not been settled before, it is now settled that the rule aa stated in that decision is the rule in Ohio.
Now it is insisted that our statute requires that a like rule shall be enforced in the courts of Indiana when suit is brought there on account of a death occurring in Ohio; that the statute of Ohio on the subject of right of recovery for death wrongfully brought about is mat enforced unless it is enforced in toto, in so far as the question of the right of recovery is affected thereby; that the rights of both parties under the statute must be enforced — the right of the defendant as-well as the right of the plaintiff — in other words, the right of the plaintiff as given, defined and limited by the statute, and not some other or greater right that plaintiff may have under the law of some other state, otherwise the statute is not enforced. If the plaintiff is given aright of recovery in the courts of Indiana on account of a death claim originating in Ohio that is denied to him under the Ohio statute, then the Ohio statute is not enforced in the courts of Indiana. It is not that the courts of Indiana shall enforce so much of the statute of Ohio on the subject as is favorable to the claimant, and decline to enforce the part which is favorable to the defendant, but the statute, which includes all the provisions'thereof, must be enforced.
If it were clear that the courts of Indiana do not, or may not enforce our statute to the fullest extent, then I would not be willing to say that a suit of this character can be maintained in this state, since the right to maintain it is given by section 6134a, Revised Statutes, and depends upon and is limited by that section. Our supreme court has so held, and though that holding may not be in harmony with the rule adopted in other states, it is obligatory upon us.
But we know of no holding by an Indiana court to the effect that in a case there prosecuted on account of an injury resulting in death occurring in Ohio, the Employers’ Liability Act will be given effect so as to modify the right of the parties; or, put the other way, that the law of Ohio on the subject will not be fully enforced without restraint or modification; and it is not apparent to us that the Employers’ Liability Act, by is terms, .requires that it should be. applied in such a case.
*445 It provides for actions brought by or on behalf of injured employes, not for actions brought by others who suffer an injury in their means of support, etc., through the death of such employe. This act is entitled: “An act regulating liability of railroads and other corporations, except municipal, for personal injury to persons employed by them, fixing the rules of evidence which shall govern in such cases, and providing that the decisions or statutes of other states shall not be pleaded or proven as a defense in this state. ” (Laws of Indiana, 1893, p. 294.)
The first section reads; “Be it enacted,” etc., “That every railroad or other corporation, except municipal, operating in this state, shall be liable in damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases.”
Then it provides a rule to limit the right of recovery on account of injury to an employe. Section 3 seems to expressly exclude this class of cases; that is to say, any case arising out of an injury sustained, not by an employe, but by those who are dependent upon the employe and whose means of support is taken away from them, and who are injured through the causing of the 'death of the employe.
Section 3 reads as follows: “The damages recoverable under this act shall be commensurate with the injury sustained unless death result from such injury, when, in such case, the action shall survive and be governed in all respects by the law now in force as to such action: Provided, that where any person recovers a judgment against a railroad or other corporation, and such corporation takes an appeal, and, pending such appeal, the injured person dies, and the judgment rendered in the court below be thereafter reversed, the right of action of such person shall survive to his legal representative.”
The provision is, in effect, that if death ensues, then the rights of the parties are not to be determined by this statute, but are to be governed, (not only as to amount of recovery, but in all respects) by 'the laws on the subject of actions for wrongfully causing death; and part of the law on that subject, according to the adjudication of the supreme court of Indiana theretofore made, is that , when the *446 death is produced in another state, the laws of such state shall be given effect in the courts of Indiana.
That this statute does not apply to death claims is made manifest, not only by the failure to provide therefor explicitly, and by the exception before noted, but by the provision that causes of action for injuries covered by the act shall not survive unless the claim is reduced to judgment before the death of the injured employe, If he dies before judgment, it is no longer a case of an injury toan employe, a case falling within the purview of the act, but is an injury of a different character, an injury to a different person or persons; that is to say, an injury to the means of support of a dependent relation, etc., arising out of the death of an employe.
That in an action brought in Indiana for a death produced in that state the Employers’ Liability Act would affect a recovery under the statute of Indiana which provides for actions for wrongfully causing death, need not be doubted, for that statute provides that the representative cannot maintain the action unless the injured person could have done so had he survived; but that statute is not called in question here. It has no extra-territorial force. It applies to death claims originating in the state of Indiana. If the claim originates in Ohio, it should be governed by the laws of Ohio; and, as before stated, we know of no decision or statute changing the rule adopted by the courts of Indiana and obtaining there before the enactment of this Employers’ Liability Act-^-which was passed March 14, 1898 —'to the effect that in such case the law of Ohio will be looked to for the determination of the rights of the parties.
It does not appear that in this particular case the laws of Indiana and the laws of Ohio as to the right of the plaintiff to recover, are at all different, and therefore it may be safe and sufficient to say, so far as this case is concerned, that the law of Indiana and of Ohio being the same, the laws of Ohio would be enforced to their full extent in Indiana in a case like this even though the Employers’ Liability Act may be given effect in Indiana in certain death cases arising in Ohio out of different states of fact.
But we do noit put the decision upon that ground: we put it upon the ground that the Employers’ Liability Act, so *447 far as we can find or discover, would not be given effect in any action prosecuted in Indiana for a death occurring in Ohio. We have no reason to suppose that it would be given effect, but we believe that the courts of Indiana would determine the right of recovery by the laws of Ohio precisely as they did in such cases before the enactment of this statute.
It is also contended by the plaintiff in error that the court erred in submitting to the jury the question whether the engineer looked ahead before starting his engine.
I cannot take time to state fully the facts of this case bearing upon this question. They are understood by counsel concerned in the case, who will understand the application of what may be said upon the subject. .
It is charged in the petition that the engineer did not keep a look-out ahead. That is a part of the negligence charged; and we think that under circumstances like those, appearing in this case that might be negligence — that the jury might so consider it. The engineer testifies that he did look out; and it seems to be the view of counsel that because no one testified that he did not lookout, therefore the court should not have submitted this question to the jury, or, if the court said anything upon the subject, it should have said that that stood as an undisputed and established fact in the case. But there was evidence tending to show that when the engineer was moving his engine ahead'he did not keep a look-out ahead; that his attention and his eyes were in a different direction and upon other objects; so that we think the court did not err in submitting to the jury the question whether the engineer was negligent in that respect.
Counsel for the plaintiff in error requested the court to charge the jury that if they believed the testimony of the engineer, that he heard the bell ring, then there could be no recovery on the ground that no warning signals was given before the engine was started. Whether the bell was rung was not made clear, but all of the testimony on this point, excepting that of the engineer, tended to show that' the bell was not rung. The engineer declared that the fireman rang the bell, and that he heard it ring. If the bell *448 was rung, the testimony tended to show very clearly that it could not have been more than a tap or two, and whether it was a very distinct or a very feeble ringing, was very uncertain under the evidence, though the weight thereof tended to show that if it was rung at all, it was done so feebly that it might not be heard at any considerable distance, there being another train passing along at the time and making a great deal of noise. The court modified this request by saying: “If you believe the testimony of the engineer of number 34, that he heard that bell ring when the fireman pulled the bell-cord, there can be no recovery against the defendant by reason of any alleged negligence of the engineer in starting the train without giving a warning signal, notwithstanding the other witnesses testify they did not hear the bell ring” — and the court adds: “ — unlesB you should find that the ringing of the bell was so mild, or the clangs so few, or so little a ringing, that it did not amount to ordinary care, and that it was less than ordinary care required.” We see no error in that. We think that the ringing of the bell should be a ringing that would give a reasonable warning under the circumstances. There might be such a ringing as would not serve as any warning at all to a person upon the track who had a right to have warning of the approach of a locomotive, and we think the court charged, correctly in charging that the ringing should be such a ringing as would be a fair warning of a person acting under the circumstances under which the testimony tended to show the deceased was then acting.
The case of L. S. & M. S. Ry. Co. v. Ford, Adm’r., 18 C. C., 239, does not disclose the facts as fully as I thought it did before looking at it, but, as I recall it, one of the charges of negligence in that case was that the engineer was not ringing his bell as he approached the Union depot, through a storm, from the Middle Ground, over that part of the track near the depot. It was a stormy night, and an employe walking upon the track, under circumstances not amounting to negligence on his part, was overtaken by a yard engine, ran over and killed. The negligence charged in each of these cases is that of not ringing the bell. That being true, what is said by Judge King upon the subject of what might be negligence in the running of a locomotive in *449 the yard, where men are supposed to be at work, or may be expected to be at work, is more pertinent in this case than appears from the facts stated in the opinion. We think that where a locomotive is being moved about in the yards, where men are at work and where they may be expected to be upon the tracks, where their duty calls them to be upon the tracks, it is not wrong for the court to submit to the jury the question of whether or not it was negligence in the engineer to omit to ring his bell constantly while moving his engine upon such tracks.
This accident happened in the night time; there was a train of cars just pulling out of the yard. The business of this brakeman who was killed required him to be about and upon this track. The engineer who was at fault, as the jury found, knew that a brakeman was likely to be there, or thereabouts, and likely to be upon or near the track, and, notwitstanding that fact, he moved, his engine forward a car-length or .more, very quietly, and, as the jury had found, without any signal being given. We think that if. the jury found that there was a tap of the bell, or yet a number of taps, but not sufficient to give a fair warning to a person upon the track in the situation of the deceased, because of the noise, etc., and that a constant or a louder ringing of the bell would have given him a warning, then it was fair to submit to the jury the question whether or not the failure to thus ring the bell was negligence. So we find no error in this.
It is urged that the verdict is contrary to the weight of the evidence. I will not take time to discuss that. We have carefully read all the evidence bearing upon the question and listened to its discussion, and we are of the opinion that the verdict is supported by the weight of the evidence.
It is said that the trial judge, when he came to pass upon the motion for a new trial — one of the grounds of which was that the verdict was excessive and that this excess in the verdict had been produced by the influence of passion and prejudice — found that ihat was true; and then instead of proceeding to do his duty, or what the law required of him, to-wit, set aside the verdict, he reduced it by $1500 and rendered judgment for the remainder, $6500.00.
*450 The journal entry is somewhat peculiar and unusual in that respect. It reads as follows: “This day came the parties by their respective attorneys and this cause came on to be heard on the motion of defendant to set aside the verdict of the jury herein rendered, and to grant a new trial of this cause, and was argued by counsel. Upon consideration whereof the court finds that the damages awarded by the jury in excess of the sum of sixty-five hundred dollars are excessive, appearing to have been given under the influence of passion or prejudice, but that the remaining grounds for a new trial in said motion are not well taken. Thereupon the court, being duly advised, orders that unless the plaintiff shall remit from the damages awarded by the jury herein all the amount thereof in excess of the sum of sixty-five hundred dollars, said motion for a new trial will be granted. ”
The plaintiff did remit the excess and the court proceeded to render judgment for the remainder.
In Pendleton St. R. R. Co. v. Rahmann, 22 Ohio St., 446, Judge West, at page 449, uses this language with respect to the entry of remittiturs and reducing verdicts:
“But in the class of actions in which the opinion of the jury, unaided by any known standard of valuation, determines the magnitude of the recovery, the power of the court over an excessive finding is, in some instances, controlled by statutory conditions. Although the verdict if purged of any supposed excess, might, in the opinion of the court, be well sustained as to the residue by the facts disclosed, yet the presence and influence of passion or prejudice in producing the excess, vitiates the verdict in toto, and excludes the power of the court to validate, or save, any part of it against the concurrence of either party, Without the consent of both, to a remittitur and judgment, the verdict, in such case, must-be vacated,”
The gist of the view of the court upoD the subject seems to be contained in that paragraph, and we believe subsequent holdings are consistent with that view. But what we have to consider and pass upon here is the action of the court below, and the action of the court below consists in rendering judgment upon this verdict for $6500.00.
We do not understand that we have anything to do with *451 the opinion of the court below that the verdict was excessive, or the views expressed by it as to how the judgment for $8,000, came to be excessive. We have to pass upon the action of the court,and not upon the views expressed by the court or given as the ground of its action, and therefore we are authorized and required to look into this record and determine for ourselves according to our own judgment whether or not the verdict for $8,000 was excessive, and whether, if excessive, such excess was produced by passion of prejudice; and, having looked into and considered the record, we are of the opinion that there is nothing, therein to indicate that there was any passion or prejudice operating upon the minds of the jury to produce this result. Whether we would have found anything in the record to move us to reduce the verdict from $8,000 to $6,500, we need not say: it is sufficient for us to say that we find nothing in the record which would authorize or require us to set aside the verdict, and therefore, the judgment of the court of common pleas will be affirmed.
Smith & Beckwith, for Plaintiff in Error.
E. L. Tioing, and H. L. Eraser, for Defendant in Error.